### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **MARK EVANS et al.,** | * | |
| | * | |
| | * | |
| Plaintiffs, | * | |
| | * | |
| v. | * | Case No. 05cv2450 RWT |
| | * | |
| **GENERAL MOTORS CORPORATION,** | * | |
| | * | |
| Defendant. | * | |
| | ******* | |

### <u>MEMORANDUM OPINION</u>

This is a products liability/breach of warranty action filed originally by Mark and Karen
Evans in the Circuit Court for Montgomery County, Maryland against Defendant General Motors
Corporation (hereinafter "GMC"), alleging that Plaintiffs' GMC Yukon is a "lemon."
<u>See</u> Paper No. 2.  GMC was served on August 8, 2005 and removed the action to this Court on
September 7, 2005 because Count 2 of the Complaint is based upon a Federal warranty statute that
provides for federal jurisdiction in cases in which more than $50,000 is in controversy.
15 U.S.C. § 2310(d)(1)(B).  <u>See</u> Paper No. 1.  Plaintiffs' Complaint alleges that GMC sold them a
defective automobile, in violation of three separate statutes: (1) the Maryland Automotive Warranty
Enforcement Act (The Maryland "Lemon Law" statute); (2) the Magnuson-Moss Warranty
Improvement Act; and (3) the Maryland Consumer Protection Act. <u>Id.</u>  The case proceeded through
discovery, at the conclusion of which GMC filed a motion for summary judgment.
<u>See</u> Paper No. 18.  For the reasons that follow, this Court will grant GMC's motion by separate
order.

**STANDARD OF REVIEW**

Under Rule 56(c) of the Federal Rules of Civil Procedure, "summary judgment is proper 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). "A material fact is one that 'might affect the outcome of the suit under the governing law.'" Spriggs v. Diamond Auto Glass, 242 F.3d 179, 183 (4th Cir. 2001) (quoting Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986).

The Supreme Court has made clear that in order for the non-moving party to raise a genuine issue of material fact, that party "may not rest upon mere allegations or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." Anderson, 477 U.S. at 256. The Court may rely only on facts supported in the record, not simply assertions in the pleadings, in order to fulfill its "affirmative obligation . . . to prevent 'factually unsupported claims or defenses' from proceeding to trial." Felty v. Grave-Humphreys Co., 818 F.2d 1126, 1128 (4th Cir. 1987) (citing Celotex, 477 U.S. at 323-24).

In undertaking this inquiry, a court must view the facts and the reasonable inferences drawn therefrom "in the light most favorable to the party opposing the motion," Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986), but the opponent must produce evidence upon which a reasonable fact finder could rely. Celotex, 477 U.S. at 323. The mere existence of a "scintilla" of evidence in support of the nonmoving party's case is not sufficient to preclude an order granting summary judgment. Anderson, 477 U.S. at 252.

**Background**

The Evans purchased a 2004 GMC Yukon XL manufactured by GMC on August 4, 2004 for a contract price of $54,467.72. See Paper No. 2. The Evans' Complaint is based on alleged defects in the vehicle's "service tire monitor light"[1] and the "front differential."[2] Id.

**Service History**

The Evans attached to their Complaint four dealership repair invoices. The first invoice, dated November 22, 2004, indicates that at 12,141 miles, the Evans brought their vehicle in for an oil change, and that during the service visit they reported to the service department that their vehicle's tire pressure monitor light "comes on at times." See Plaintiffs' Complaint, Exhibit B. The invoice indicates that the technician determined that codes were stored in the vehicle's on-board computer and that the technician cleared the relevant codes. Id. The vehicle was then road-tested, and the technician indicated on the invoice that "all tire pressures ok" and "roadtested ok." Id. The invoice does not indicate that any repair attempt was made to the vehicle's tire pressure monitoring system. Id.

The second invoice, dated January 14, 2005, indicates that at 16,291 miles, the Evans brought their vehicle in for an oil change, and during the service visit they reported that "the service

---

[1]The tire pressure monitor system internally checks tire pressure levels. The tire pressure warning light will illuminate if the system detects that tire pressure is abnormal, and a code will be entered into the on-board computer system. When the light appears on the in-dash screen, the driver of the vehicle can press a button to clear the message from the screen. The light will continue to appear at ignition until the tires are inflated to the correct pressure. See Owner's Manual excerpts, attached as Exhibit 1 to Defendant's Motion for Summary Judgment.

[2]At oral argument, the Plaintiffs abandoned their claims regarding the front differential, admitting that the outcome of this action is entirely dependent upon the merits of their tire pressure monitor system claim. As such, this Court will neither discuss nor consider the merits of the front differential claim when weighing Defendant's motion for summary judgment.

tire monitor light comes on several times while driving." See Plaintiffs' Complaint, Exhibit C.  The invoice indicates that the customer was told to monitor the light and "return at [a] later date if [the] light comes on."  Id.  The invoice does not indicate that any repair attempt was made during this second service visit.  Id.

The third invoice, dated February 10, 2005, indicates that at 17,136 miles, the Evans brought the vehicle in complaining that "the service tire monitor light comes on." See Plaintiffs' Complaint, Exhibit D.  After testing, the servicing dealership replaced the right front door switch module for the tire monitoring system.  Id.   This is the only reported repair conducted on the tire monitor system.

The fourth invoice, dated April 20, 2005, indicates that at 24,768 miles, the Evans brought the vehicle in for an oil change, and during the visit they reported that "intermittently while driving [at] random times the 'service tire' warning message will come on." See Plaintiffs' Complaint, Exhibit E.  The invoice indicates that the service department "check[ed] and set tire pressures" and conducted "preventative maintenance."  Id.  The invoice does not indicate that any repair attempt was made during this service visit.  Id.

### Deposition of Plaintiff Karen Evans

The Plaintiff, Karen Evans, is the primary driver of the vehicle and was deposed regarding her use of the vehicle.  See Plaintiff's Deposition at 7, attached as Exhibit 2 to Defendant's Motion for Summary Judgment.  Evans testified that all repairs were covered by the vehicle's warranty, and that she was not charged for any of the inspections or repairs conducted by the dealership.  Id. at 50.  She further testified that the car has never failed to transport her to her intended destination.  Id. at 73.

With regards to the tire pressure monitor light, Evans testified that the light "comes on or off sporadically."  Plaintiff's Deposition at 37.  Ms. Evans testified that she had had a flat tire in Winter 2004, coinciding with the time when the Plaintiffs began complaining of the tire pressure monitor problem.  Id. at 54. Ms. Evans also acknowledged that, on a separate occasion, she had a nail in her tire and had it repaired with a plug, rather than replacing the tire.  Id. at 66-67.  Evans acknowledged that when the light came on, she added air to the tire, which caused the light to turn off.  Id. at 67.


**Plaintiffs' Expert**

The Evans designated James Lewis as their expert in this case.  Lewis' report is attached as Exhibit 6 to Defendant's Motion for Summary Judgment.  Lewis' report is limited to his opinion that there was a loss in value of the vehicle as a result of its repair history.  He conceded at his deposition that his opinion in the case was limited to damages and he does not attempt to identify any defect at issue.  See Lewis Deposition at 8, 9, attached as Exhibit 7 to Defendant's Motion for Summary Judgment.  During his deposition, Lewis was specifically asked if he had an opinion as to whether the vehicle was suffering from a current defect.  Lewis answered, "No, I don't."  Id. at 8.  When asked if the car suffered from an "uncorrectable defect" he answered "I don't have an opinion."  Id. Not only did Lewis provide no opinion on the issue of whether the car suffered from a defect, but also he did not opine that GMC failed to correct any such defect in a reasonable period of time.

Lewis opined that the vehicle suffered a loss in market resale value due to the repair history of the vehicle.  See Lewis' Report, page 2, attached as Exhibit 6 to Defendant's Motion for Summary Judgment. Lewis never physically inspected the vehicle, and did not personally interview the Evans or any of the technicians who worked on the vehicle.  See Lewis Deposition at 10, 13, 27.

Lewis never reviewed the notes of the technicians who worked on the vehicle, nor did he review the report filed by GMC's expert. Id. at 52-54. Lewis was unaware that Mrs. Evans had experienced a flat tire on one occasion, and a nail in a tire on another. Id. at 50-51.

In their Opposition to Summary Judgment, the Evans attached an additional affidavit from Lewis, in which he opined that due to the vehicle's repair history, the car is likely to suffer from future problems, thus diminishing the value of the vehicle. See Affidavit of James Lewis, attached as Exhibit 1 to Plaintiffs' Opposition to Defendant's Motion for Summary Judgment, paragraphs 6-7. Lewis then opined that the Evans "should" have paid approximately $16,000 less at the time of purchase, based upon the diminished trade-in value of the vehicle due to the vehicle's warranty service history. Id., paragraphs 9-11.

Lewis' affidavit fails to provide an opinion as to whether (1) the vehicle suffered from a defect during the warranty period which GMC failed to correct in a reasonable time frame, and (2) that defect resulted in a diminution in the vehicle's value. As GMC correctly points out, Lewis' valuation theory would effectively render the manufacturer of a vehicle the insurer of the vehicle's value, which is something this Court is not prepared to do. Cf. Schneider v. Chrysler Motors Corp., 401 F.2d 549, 557 (8th Cir. 1968) (stating "A manufacturer is not an insurer and cannot be held to a standard of duty of guarding against all possible types of accidents and injuries.") Thus, Lewis' opinion is insufficient as a matter of law, and must be disregarded.

As explained in the pages that follow, no cause of action asserted by the Evans makes a manufacturer liable for a vehicle's diminution in value based solely on its service history. The Lewis opinion here is reminiscent of Palsgraf v. Long Island Railroad Company. 162 N.E. 99, 248 N.Y. 339 (1928). As Judge Cardozo stated in that seminal case, "negligence in the air is not

enough." Id. at 99.   The Lewis opinion fails to show any causal link between the alleged defect and the alleged loss in value.  Similar to Palsgraf, "The law of causation, remote or proximate, is thus foreign to the case." at bar.  Id. at 101.  Without proof of the nexus between the value loss and the failure of a vehicle manufacturer to correct a defect in a reasonable time, the Evans' claims have no footing on which to stand.  Since the opinion of the Evans' expert fails to apply the proper legal standard, it must, and will, be disregarded.

### Defendant's Expert

GMC designated David Hurt, Jr. as its expert on issues of liability and damages in this case. See Hurt Affidavit, attached as Exhibit 3 to Defendant's Motion for Summary Judgment.  Hurt conducted an inspection of the vehicle on January 4, 2006, when the vehicle odometer read 48,449 miles.  See id. at paragraph 5.  Hurt reviewed the warranty repair history for the vehicle, and he also interviewed the relevant technicians who serviced the vehicle for the Evans.  Id. at 4.

Hurt conducted specific tests on the vehicle to determine whether the tire pressure monitoring system was working properly.  First, Hurt road-tested the vehicle, under both city and highway conditions, during which the light did not illuminate.  Id. at 7.  Hurt then lowered the pressure in one tire, at which point the light illuminated, indicating low pressure.  Id.  Hurt re-inflated the tire to the proper pressure, causing the light to turn off.  Id.  Hurt then reprogrammed each tire monitor, at which point Hurt determined that the system was functioning properly.  Id. Hurt then visually inspected the tires, finding various amounts of wear and tear.  Id. at 8.  During the inspection, he determined that the right rear tire had a plug in it, and after testing it with soapy water, he found it to be seeping air.  Id.

Based upon the evidence he reviewed and his inspection of the vehicle in question, Hurt opined that, to a reasonable degree of mechanical certainty, there is no existing defect in material or workmanship with the Evans' vehicle.  Id. at 12.  Hurt also concluded that any defect that may have previously existed in the vehicle was properly corrected by the service technicians conducting the repairs under warranty.  Id.  Finally, Hurt stated his opinion that the vehicle has not lost any value as a result of the repairs because there is no existing defect in the vehicle, and any alleged defect was properly addressed by the dealership.  Id. at 14.

## Analysis

## Maryland Automotive Warranty Enforcement Act ("Maryland Lemon Law")

Section 14-1502(c)(1) of the Maryland Lemon Law provides: "If, during the warranty period, the manufacturer or factory branch . . . is unable to repair or correct any defect or condition that substantially impairs the use and market value of the motor vehicle to the consumer after a reasonable number of attempts, the manufacturer . . . [shall replace the vehicle at consumer's option]." Md. Code Ann., Com. Law § 14-1502, et. seq. (Supp. 1999).  (Emphasis added.)  Section 14-1502(d) states that the requirement of a reasonable number of repair attempts will be met if: "The same nonconformity, defect, or condition has been subject to repair four (4) or more times by the manufacturer . . . within the warranty period but such nonconformity . . . continues to exist."  Id. at § 14-1502(d).  (Emphasis added.)

In a case where a vehicle repurchase is sought, the plaintiffs bear the burden of proving several elements, including the existence of an incurable defect.  In Murphy v. 24th St. Cadillac Corp., 727 A.2d 915, 919-920 (Md. 1999), the Court of Appeals of Maryland interpreted the statute to require (1) the existence of a defect, (2) the defect must be one that the manufacturer is unable

to fix after a reasonable number of attempts, and (3) the defect must be one that substantially interferes with the use and market value of the vehicle.  Id.

Here, the record is undisputed—the vehicle does not suffer from any defect, much less one that could not be repaired.  GMC's expert submitted a report describing his findings, which detailed that the vehicle in question is currently operating without any form of defect whatsoever.  Furthermore, his report stated that any previous defect the vehicle suffered from was cured during a single repair attempt at 17,136 miles.  During that single repair attempt, the dealership replaced a door module on the tire monitoring system.  Subsequent testing by GMC's expert confirmed that the single repair attempt was successful, and that the tire monitoring system is currently operating in a proper fashion without defect.

The Evans' expert does not rebut any of this evidence in Hurt's report.  To the contrary, Lewis' report focuses exclusively on valuation, specifically his claim that the "repair history" of the car is indicative of a diminution in resale value of the vehicle.  However, Lewis provides no opinion as to whether any defect, repairable or otherwise, exists in the vehicle; Lewis merely opined that the car is "likely" to suffer from future defects due to the service history of the vehicle.[3]  Based upon

---

[3]Lewis' affidavit states that "given the repair history of this vehicle, [the Evans are] likely to experience future problems with the vehicle that will diminish the value of the vehicle." However, the affidavit never states that a defect actually exists in the vehicle, nor does it specifically state that it is likely to suffer from future problems with the tire pressure monitor system.

Even if Lewis' affidavit were correct in stating the Evans' vehicle is likely to experience future problems, this is insufficient to succeed on a Maryland Lemon Law claim.  The key issue in a Lemon Law claim is that **some specific existing defect** continues to manifest itself, eluding repair attempts by the vehicle manufacturer.  The law is not designed to provide a remedy against unknown and unspecified future problems.

the evidence in the record, the Evans have failed to establish causation linking the alleged diminution in resale value to a material defect in the vehicle as manufactured by GMC.

In addition, the Evans' assertions of substantial impairment of the use of the vehicle due to the alleged defect is simply not credible in light of the significant milage the Plaintiffs have put on the vehicle. Mercedes-Benz of North America v. Garten, 618 A.2d 233, 240 (Md. Ct. Spec. App. 1993) (stating plaintiff's use of a vehicle, in which the plaintiff put approximately 1800 miles on the vehicle in the span of one month is "hardly indicative of an individual who considers a car unsafe.") The Evans accumulated nearly 50,000 miles on the vehicle during the first 17 months of ownership. Furthermore, during the period when the Evans claim the vehicle was suffering from the alleged incurable defect, rendering it unfit for daily use, the Evans traveled, on average, roughly 3,000 miles each month.

The undisputed record indicates that the Evans cannot factually support a claim under the Maryland Lemon Law because (1) the car does not currently suffer from a defect, and (2) any previous defect was cured during a single repair attempt, well within the statutory conception of "a reasonable number of repair attempts." Md. Code Ann., Com. Law § 14-1502.  The Evans have failed to contradict the evidence presented by GMC  that the car is presently operating without defect, and as such, there is no genuine issue of material fact as to this issue.

For these reasons, the Court concludes that the Evans cannot support their Maryland Lemon Law claim and will grant, by separate order, summary judgment in favor of GMC on the Evans' Maryland Lemon Law claim.

## Magnuson-Moss Warranty Act

Section 2304(a)(4) of the Magnuson-Moss Warranty Act provides that when a product or

component "<u>contains a defect or malfunction after a reasonable number of attempts by the warrantor</u> <u>to remedy defects or malfunctions</u> in such product, such warrantor must permit the consumer to elect either a refund for, or a replacement without charge of, such product or part . . . ."  15 U.S.C. § 2304(a) (Emphasis added.)

In a July 28, 2005 unpublished Opinion, Judge Quarles of this Court held that  "[t]o prevail on a Magnuson-Moss Warranty Act claim, [the plaintiff] must establish that: (1) his vehicle has a defect in parts or workmanship, (2) [the defendant warrantor] was not able to remedy the defect in a reasonable amount of time, and (3) he suffered economic harm as a result."  <u>Hickey v. General</u> <u>Motors Corp.</u>, Civil No.: WDQ-04-1324, attached as Exhibit 11 to Defendant's Motion for Summary Judgment.

Implicit in this analysis is that the burden is on the plaintiff to establish that the vehicle suffers from a defect in parts or workmanship.  As previously stated, the Evans have failed to present any evidence demonstrating that a defect exists in the vehicle.  On the contrary, the uncontested evidence submitted by GMC's expert suggests that the vehicle is presently operating without defect.  Thus, under the test described by this Court in <u>Hickey</u>, the Evans are unable to prevail on their Magnuson-Moss Warranty Act claim.

Furthermore, the Fourth Circuit has held that in an implied warranty of merchantability claim under the Magnuson-Moss Warranty Act, a plaintiff cannot assert a claim for the "lost resale value" of a vehicle without first demonstrating the threshold element that the vehicle actually suffers from a defect.  <u>Carlson v. General Motors Corp.</u>, 883 F.2d 287, 298 (4th Cir. 1989) (stating "'Merchantability' clearly does not encompass consumer expectations that a product will hold its

value.")  In other words, a plaintiff cannot argue a loss in valuation of the vehicle without first demonstrating the relevant causation attributable to the defendant auto manufacturer.

Because the Evans are unable to contradict the evidence submitted by GMC's expert stating that the vehicle is currently operating without defect or malfunction, there is no genuine issue of material fact as to this issue.

For these reasons, this Court concludes that the Evans' claim under the Magnuson-Moss Warranty Act must also fail.  Accordingly, the Court, by separate order, will grant summary judgment in favor of GM on the Evans' Magnuson-Moss Warranty Act claim.

## Maryland Consumer Protection Act

The Evans' Maryland Consumer Protection Act claim is entirely derivative of their Maryland Lemon Law claim, and as such, also fails as a matter of law.  The Maryland Lemon Law provides, "A violation of this subtitle [the Maryland Lemon Law] shall be an unfair and deceptive trade practice under Title 13 of the Commercial Law Article [the Maryland Consumer Protection Act]." Md. Code Ann. Com. Law §14-1504(a).  Thus, if the Evans can prove a violation of the Maryland Lemon Law, by definition, the Evans can prove a violation of the Maryland Consumer Protection Act.  Here, as previously indicated, the Evans are unable to demonstrate that GMC violated the Maryland Lemon Law.  Thus, under the facts in the record, the Evans are unable to prove a threshold element of their Maryland Consumer Protection Act claim as well.

The Evans admit that GMC has never refused to repair their vehicle while under warranty. Plaintiff's Deposition at 79.  The sole basis for the Evans' unfair and deceptive trade practice claim is the fact that their vehicle allegedly suffered from defects in material and workmanship that

required repair under warranty.  <u>Id.</u> at 82.  The Evans do not contend that GMC knew about the alleged defect at the time of sale.  <u>Id.</u>  Thus, it appears the Evans are claiming that each time a manufacturer sells a vehicle that requires a warranty repair, the manufacturer has committed an unfair and deceptive trade practice.  However, the only allowance the Consumer Protection Act makes for proving claims through evidence of a breach of warranty is the specific reference to the Maryland Lemon Law.  Thus, in order to prevail in a Consumer Protection Act claim under these circumstances, the Plaintiffs must prove that the vehicle meets the Lemon Law definition of a vehicle suffering from a condition or defect that cannot be repaired.  As the record indicates, the Evans are unable to establish this fact.

For these reasons, this Court holds that the Evans' claim under the Maryland Consumer Protection Act must also fail.  Thus, the Court will, by separate order, grant summary judgment in favor of GM on the Evans' Maryland Consumer Protection Act.

## <u>CONCLUSION</u>

For the foregoing reasons, this Court will, by separate order, GRANT Defendant's Motion

for Summary Judgment.[4]


_____10/26/06_____                          _____/s/_____
DATE                                    ROGER W. TITUS
                                  UNITED STATES DISTRICT JUDGE

---

[4]This is one of a number of cases brought by the firm of Kimmel and Silverman, a law firm based in Ambler, Pennsylvania, which describes itself as the "Lemon Law firm." In 2004, it opened an office in Owings Mills, Maryland, and attorneys in that office filed about 400 law suits against automobile manufacturers. <u>See</u> "<u>Too Many Cases, Not Enough Help, Lawyer Says</u>", *The Daily Record*, October 18, 2005; <u>see</u> <u>also</u>, "<u>Pennsylvania Based Consumer Law Firm Faces Further Challenges</u>," *The Daily Record* (Baltimore, MD, August 11, 2006). The attorney in charge of the office was not able to keep up with the pace of the litigation, and after months of discovery problems, she left the firm. Based on the decision in this case and in <u>Heaps v. General Motors Corporation</u>, Civil No. RDB 05-1500 (Opinion filed August 23, 2006), there is a serious question as to whether the bringing of these two cases complied with the threshold requirement of Rule 3.1 of the Maryland Lawyers' Rules of Professional Conduct which precludes a lawyer from bringing a proceeding unless there is a basis for doing so that is not frivolous, and of Rule 5.1 of the Maryland Lawyers' Rules of Professional Conduct which imposes an obligation on the management of a law firm to take reasonable efforts to ensure that the firm has in effect measures giving reasonable assurance that all lawyers in the firm conform" to the ethical rules. Hopefully, the management of this firm has now taken steps to correct the numerous problems associated with its awkward entry into the Maryland market chronicled by *The Daily Record*. <u>Id</u>.